IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD ALDRIGO EVANS,

      Plaintiff,

      v.

LAWRENCE P. MAHALLY, *et al.*,

      Defendants.

No. 4:19-CV-01112

(Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 27, 2020

Plaintiff Donald Aldrigo Evans, a state prisoner presently confined at the State Correctional Institution at Dallas in Dallas, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging various claims arising from his incarceration at SCI Dallas.[1]  Presently before the Court is Defendants' motion to dismiss the complaint,[2] which is ripe for adjudication.  For the reasons that follow, the Court will grant in part the motion to dismiss.

## I.     FACTUAL BACKGROUND

On or about June 28, 2017, SCI Dallas was placed on lockdown, and Defendants John Does 1 and 2 were assigned to search Plaintiff's cell.[3]  Prior to

---

[1]  Doc. 1.
[2]  Doc. 13.
[3]  Doc. 1 at 18.

searching his cell, Plaintiff was subjected to an allegedly unlawful strip search in front of male and female staff, and other inmates.[4]  In light of the allegedly unlawful strip search, Plaintiff called for help to his unit manager, Defendant Michael Kaye, who did not respond.[5]  During Plaintiff's cell search, the Defendants Doe destroyed some of Plaintiff's personal property, including a back brace, bible, and legal documents.[6]  Plaintiff filed grievances about this incident and also requested to speak with Defendant Kaye about it.[7]  Defendant Kaye and Plaintiff discussed the cell search, and Plaintiff was able to view the log book, where the officers who searched Plaintiff's cell could not be identified.[8]  Plaintiff alleges that this is in violation of Department of Corrections procedures, and that those officers should have initialed or signed the log book.[9]  During their conversation, Defendant Kaye apologized to the plaintiff and stated that he would try to replace some of the items destroyed, but that he would be denying the grievance because there was no way to discover which officers searched Plaintiff's cell.[10]

Next, Plaintiff complains of various mail issues at SCI Dallas that occurred in or around July 20, 2018.[11]  Plaintiff alleges that his mail issues are retaliatory in

---

[4]   *Id.*
[5]   *Id.*
[6]   *Id.* at 19.
[7]   *Id.*
[8]   *Id.* at 20.
[9]   *Id.*
[10]  *Id.* at 21.
[11]  *Id.* at 24.

nature, and that he contacted the superintendent's secretary, Defendant Roxanne Florek, to file an inmate request about mail confiscation.[12]   Despite Plaintiff explaining why he wanted the confiscated mail, the mail room apparently stated that his reasons were not legitimate.[13]   Plaintiff then filed a grievance regarding this incident, and Defendant Superintendent Mahally responded to it and said that Plaintiff was allowed to receive his mail.[14]   The mail, however, was never delivered to Plaintiff.[15]   Plaintiff filed an inmate request to staff regarding receive the mail, to which Defendant Giselle Malat replied.   She informed Plaintiff that due to a new policy change, all mail would be processed through Defendant Smart Communications/DOC and then be forwarded to the inmate.[16]   Plaintiff alleges that the mail was never delivered to him and was never returned to sender.[17]   It is unclear whether the mail was ever sent to Smart Communications/DOC.[18]

Plaintiff also complains about the confiscation of legal documents mailed to him.   Specifically, on or about December 5, 2018, Plaintiff alleges that his sibling mailed him approximately thirty-two pages of legal documents needed for Plaintiff's PCRA appeal.[19]   Plaintiff alleges that SCI Dallas confiscated these documents and

---

[12]   *Id.*
[13]   *Id.* at 25.
[14]   *Id.* at 25-26.
[15]   *Id.* at 26.
[16]   *Id.*
[17]   *Id.* at 27-28.
[18]   *Id.* at 28.
[19]   *Id.*

Plaintiff has not been able to obtain them.[20]  Another incident occurred in or around April 7, 2019, when legal mail sent by Plaintiff's PCRA attorney was not received by Plaintiff.[21]  According to Plaintiff, his attorney contacted DOC representatives from Harrisburg and SCI Dallas, who told the attorney that Plaintiff should have received the legal mail and it was unclear why he had not.[22]

In addition, Plaintiff alleges that Defendant Snyder has retaliated against him by constantly harassing him and mistreating him.[23]  The incidents occurred in or around April 8 and 9, 2019.  For example, Defendant Snyder almost slammed Plaintiff's cell door on his fingers, has interfered with Plaintiff's attempts to make phone calls, and has, at least on one occasion, prevented Plaintiff from going to the commissary.[24]  According to Plaintiff, Defendant Snyder told Plaintiff that he could misrepresent facts in reports or otherwise falsify them to send inmates to the restricted housing unit.[25]

## II.    STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the

---

[20]  *Id.* at 28-29.
[21]  *Id.* at 35.
[22]  *Id.* at 35-36.
[23]  *Id.* at 30.
[24]  *Id.* at 30-33.
[25]  *Id.* at 33.

defendant with fair notice of the claim.[26]  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[27]  The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[28]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[29]  The court need not accept unsupported inferences,[30] nor legal conclusions cast as factual allegations.[31]  Legal conclusions without factual support are not entitled to the assumption of truth.[32]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense

---

[26]  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[27]  *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).

[28]  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[29]  *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).

[30]  *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

[31]  *Twombly*, 550 U.S. at 556.

[32]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

review of the claim to determine whether it is plausible.  This is a context-specific task, for which the court should be guided by its judicial experience.  The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[33]  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[34]  The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[35]

## III.   DISCUSSION

In the motion to dismiss, Defendants argue that certain Defendants lack personal involvement in the claims alleged and must be dismissed; that Plaintiff has failed to state a claim upon which relief may be granted regarding his cell search/destruction of property and access to the courts claims; that Plaintiff has failed to exhaust his claims against Defendant Snyder; and that the claims in the complaint are generally misjoined in violation of Federal Rule of Civil Procedure 20.  The Court will address each issue *seriatim*.

First, the Court will dismiss the claims alleged against Defendants Wetzel, Mahally, Ransome, and Florek because they were not personally involved in the

---

[33] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[34] *Iqbal*, 556 U.S. at 678.
[35] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

wrongful actions alleged by Plaintiff. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[36]  Further, supervisory liability cannot be imposed under § 1983 by *respondeat superior*.[37]  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[38]  A plaintiff must show that an official's conduct caused the deprivation of a federally protected right.[39]

In addition, a prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or an official grievance does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.[40]  Notably, a supervisory official

---

[36]  *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007).  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[37]  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993).

[38]  *Iqbal*, 556 U.S. at 677.

[39]  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

[40]  *See Rode*, 845 F.2d at 1207-08 (concluding that review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (prison officials cannot be held liable solely based on their failure to take corrective action when grievances or investigations were referred to them); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dep't of Corrs.*, No. 06-cv-1444, 2006 WL 2129148, at

has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights.[41]

Here, these Defendants are either not mentioned in the factual allegations of the complaint, or their involvement is limited to receiving or responding to grievances, or in a supervisory capacity.  Because such involvement is insufficient to trigger § 1983 liability, Plaintiff has failed to state a claim upon which relief may be granted as to Defendants Wetzel, Mahally, Ransome, and Florek.

Next, Plaintiff has brought his constitutional claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[42]  "The first step in evaluating a section 1983 claim is to 'identify the

---

*2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

[41] *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).

[42] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[43]

The First Amendment protects a prisoner's fundamental constitutional right of access to the courts.  That right, however, is not an independent right of access to adequate law libraries or persons trained in the law.[44]  Rather, "[a] prisoner making an access to the courts claim is required to show that the denial of access caused actual injury."[45]  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."[46]  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.[47]  An actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.[48]  "[T]he underlying cause of action . . . is an

---

[43] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

[44] *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).

[45] *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (quoting *Lewis*, 518 U.S. at 350).

[46] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

[47] *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (affirming dismissal of denial of access claims where plaintiff failed to connect alleged deficiencies in library to harm in underlying action).

[48] *Christopher*, 536 U.S. at 415.

element that must be described in the complaint."[49]  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.[50]

In the matter at hand, Plaintiff has failed to allege any actual injury that resulted from the confiscation or destruction on his legal materials.  Further, the Court notes that Plaintiff has specifically pled that he had an attorney for his PCRA proceedings.  Because Plaintiff has failed to allege an actual injury and because he had an attorney representing him during his PCRA proceedings, Plaintiff has failed to state an access to the courts claim upon which relief may be granted.

Next, to the extent that Plaintiff seeks to bring a Fourth Amendment claim regarding the search of his cell and seizure of materials therein, Plaintiff cannot state such a claim as a matter of law.  The Supreme Court of the United States has explicitly held that prisoners lack a reasonable expectation of privacy in their cells, and thus the Fourth Amendment's protections against unlawful searches and seizures do not extend to prison cell searches.[51]

Considering Plaintiff's allegations from a due process perspective under the Fourteenth Amendment, which prevents state officials from depriving individuals from their property without due process of law, the Supreme Court has also held that

---

[49]  *Id.*
[50]  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977); *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)).  *See also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013).
[51]  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

the seizure or destruction of property does not violate the Due Process Clause if the state provides a meaningful post-deprivation remedy.[52]  Here, as Defendants point out, a meaningful post-deprivation remedy was provided by the Department of Corrections in the nature of the prison grievance procedure.[53]  As such, Plaintiff has failed to allege either a Fourth or Fourteenth Amendment claim regarding the search of his cell and seizure of materials located therein.

Defendants also argue that Plaintiff's claims related to the incidents with Defendant Snyder from April 8 and 9, 2019, were not exhausted prior to filing this lawsuit or have not been exhausted.  The Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials "until such administrative remedies as are available are exhausted."[54]  To satisfy this requirement, a prisoner must exhaust all available administrative remedies *prior* to filing a civil rights action.[55]

Defendants assert that although Plaintiff filed grievances regarding these issues in April 2019, they were not exhausted before Plaintiff initiated this lawsuit in or around June 28, 2019.  The allegations made by Plaintiff and the grievances

---

[52]  *See id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

[53]  *See also Hernandez v. Corrs. Emergency Response Team*, 771 F. App'x 143 (144-45) (3d Cir. 2019) (affirming district court's grant of motion to dismiss regarding dismissal of due process claim regarding loss and damage to prisoner's property because Pennsylvania provided an inmate grievance procedure).

[54]  42 U.S.C. § 1997e(a).

[55]  *See Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002).

attached to the complaint establish that he filed the grievances in April 2019, but the documents do not establish that Plaintiff failed to exhaust them before filing this lawsuit.[56]  It is unclear when or whether Plaintiff exhausted the grievances.  Because the Court would need to rely on documents outside the complaint in order to determine whether Plaintiff exhausted these claims, the Court will deny without prejudice this argument.  Defendants are permitted to file an appropriate motion raising this issue in the future.

Finally, under Federal Rule of Civil Procedure 20,

> Persons . . . may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and, any question of law or fact common to all defendants will arise in the action.

The remaining claims involve the strip search of Plaintiff by the John Doe defendants as well as various issues of alleged retaliation, allegedly resulting from the grievances and complaints filed by Plaintiff.  Construing these allegations liberally and in the light most favorable to Plaintiff, the Court cannot conclude at this time that they have been misjoined.   As such, Defendants' arguments regarding misjoinder will be denied without prejudice.

---

[56]   *See*, *e.g.*, Doc. 1-1 at 37.

## IV.    CONCLUSION

Based on the foregoing, the motion to dismiss will be granted in part, and certain claims and parties as described herein will be dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge